UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT BROOKLYN

```
-----------------------------------------  :
                                           :
In re:                                     :
                                           :        Chapter 11
BOWNETREE, LLC,                            :
                                           :        Case No. 08-45854 (DEM)
                                           :
                Debtor-in-Possession.      :
                                           :
-----------------------------------------  :
```

## <u>MEMORANDUM OF KENNEDY FUNDING INC. IN SUPPORT OF ALLOWANCE OF POST-PETITION INTEREST AND ATTORNEYS' FEES AND COSTS PURSUANT TO 11 U.S.C. § 506(b)</u>

Kennedy Funding, Inc. ("Kennedy"), a secured creditor of Bownetree, LLC, the debtor and debtor-in-possession herein (the "Debtor"), by and through its attorneys, Cole, Schotz, Meisel, Forman & Leonard, P.A., in support of its request for an allowance of post-petition interest and attorneys' fees and costs pursuant to Section 506(b) of the Bankruptcy Code, respectfully states as follows:[1]

## I. <u>INTRODUCTION</u>

1.      On March 31, 2009, the Court held a hearing on, among other things, the Debtor's motion (the "Sale Motion") to sell substantially all of its assets to 36-20 Bowne LLC ("Bowne") and confirmation of the Debtor's Amended Chapter 11 Plan of Reorganization (the "Plan"). Kennedy filed an objection to the Sale Motion and confirmation of the Plan on the basis of, *inter alia*, the Sale Motion and the Plan's failure to address how the Debtor intends to satisfy the various requirements for assumption and assignment of the Loan Documents (defined below) to

---

[1] The capitalized terms herein shall have the same definitions ascribed to them in Kennedy's Objection to (i) the Debtor's Motion for an Order Approving the Sale of All of the Debtor's Real Properties and (ii) Confirmation of the Debtor's Chapter 11 Plan of Reorganization Dated February 25, 2009. (Docket No. 72.)

Bowne, as well as the Plan's failure to provide for any payment to Kennedy on account of its secured claim, in violation of Section 1129(b)(2)(A) of the Bankruptcy Code.

2.      At the March 31, 2009 hearing, Kennedy withdrew its objection and consented to the sale of the Real Property to Bowne, subject to Kennedy's lien, and assumption and assignment of the Loan Documents to Bowne.  Kennedy also consented to confirmation of the Plan, the centerpiece of which is the sale to Bowne (the "Sale").  Kennedy's consent to confirmation of the Plan and the Sale Motion was based on Bowne's agreement to cure any arrears under the Debtor's loan from Kennedy, by no later than the closing of the Sale.  As set forth more fully below, these arrears consist of post-petition interest at the Default Rate and Kennedy's reasonable attorneys' fees and costs in the approximate amount of $82,936.43 as of April 7, 2009.

3.      Kennedy's entitlement to post-petition interest and reimbursement of reasonable attorneys' fees pursuant to Section 506(b) of the Bankruptcy Code is based on the Loan Documents and Kennedy's status as an oversecured creditor, a fact that has been acknowledged repeatedly by the Debtor and not contested by any party in this case.  Thus, Kennedy is entitled to post-petition interest on its loan at the Default Rate and an award of its reasonable attorneys' fees and costs incurred in connection with this case.

## II.  BACKGROUND

### A.      The Loan.

4.      On or about June 27, 2008, Kennedy loaned the Debtor the principal amount of Seven Million Fifty Thousand  ($7,050,000.00) Dollars (the "Loan").  The Loan is evidenced and secured by, *inter alia* (i) a Loan and Security Agreement dated June 27, 2008 (the "Loan Agreement"), (ii) a Promissory Note dated June 27, 2008 (the "Note"), (iii) a Mortgage and Security Agreement dated June 27, 2008 (the "Mortgage"), pursuant to which Kennedy was

2

granted a first priority mortgage lien on the Debtor's real property consisting of vacant land located at 142-32, 142-36, 142-40 and 142-42 37th Avenue, Block 5011, Lots 19, 20, 21 and 23, Flushing, New York, 11354, and five townhouses located at (a) 5013-66, 143-19A, 38th Avenue, Flushing New York; (b) 5013-65, 143-19B, 38th Avenue, Flushing, New York; (c) 5013-64, 143-19C, 38th Avenue, Flushing, New York; (d) 5013-63, 143-21A, 38th Avenue, Flushing, New York; and (e) 5013-62, 143-21B, 38th Avenue, Flushing, New York (collectively, the "Real Property"), and (iv) an Assignment of Leases and Rents (the "Assignment") on the Real Property (collectively, the "Loan Documents").  Copies of the Loan Agreement, Note, Mortgage and Assignment are attached hereto as **Exhibits A, B, C and  D** respectively.  The obligations of the Debtor under the Loan Documents were guaranteed by Suzuki Capital Funding, Ltd. ("Suzuki Capital") and Sammy Isamu Suzuki, Suzuki Capital's sole shareholder (collectively, the "Guarantor").

5.      The term of the Loan is three (3) years, commencing on June 27, 2008 (the "Commencement Date"), and maturing June 26, 2011 (the "Maturity Date").  Pursuant to the Note, interest accrues on the principal amount of the Loan at the following escalating rates: (i) twelve (12%) percent per annum for the month of June 2008; (ii) the greater of twelve (12%) percent or Prime Rate plus seven (7%) percent from July 1, 2008, through and including June 26, 2009; and (iii) the greater of eighteen (18%) percent or Prime Rate plus thirteen (13%) percent from June 27, 2009, through and including the Maturity Date.  See Note, p. 2.  The Note further provides for a default rate of interest of twenty-five (25%) percent per annum, subject to limitation, if applicable, by the highest lawful rate (the "Default Rate").  See Id., pp. 1, 4.

6.      In connection with the Loan, Kennedy established a reserve for pre-paid interest (the "Interest Reserve") in the original amount of $498,000.00.  The Loan Documents provide that upon an Event of Default (which includes the filing of a bankruptcy petition by the Debtor),

3

Kennedy may accelerate the full balance of the Loan.[2] (Loan Agreement, pp. 24-26; Note, pp. 3-4; Mortgage, pp. 5, 18-19.) Upon acceleration, the entire Loan balance would become due and payable. (Loan Agreement, p. 26; Note, pp. 3-4; Mortgage, pp. 5, 21.) Upon the Debtor's failure to pay the Loan in full, Kennedy was authorized to increase the interest rate on the Loan to the Default Rate. (Loan Agreement, pp. 24-26, 28; Note, pp. 3-4.)

**B.** **Post-Petition Accrual of Interest on the Loan.**

7.      On September 4, 2008 (the "Filing Date") the Debtor filed its Chapter 11 petition with this Court. As of the Filing Date, Kennedy was owed the principal sum of $4,150,000.00 on account of the Loan and was holding the sum of $410,850.00 in the Interest Reserve. As a result of the Debtor's Chapter 11 filing, Kennedy accelerated the full balance of the Loan and began accruing interest on the Loan at the Default Rate, as authorized under the Loan Documents. Since the Filing Date, interest has accrued in the approximate amount of $2,881.94 per diem. As a result, the Interest Reserve was depleted on or about January 25, 2009.

8.      The principal balance of Kennedy's secured claim is $4,150,000.00, which represents the amount that was advanced to the Debtor at the closing of the Loan (the "Advanced Funds"). The difference between the Loan amount of $7,050,000.00 and the Advanced Funds consists of a construction holdback in the amount of $2,600,000.00 and an environmental holdback in the amount of $300,000.00 (collectively, the "Holdbacks"). (Loan Agreement, pp. 5-10.) The Holdbacks, however, were never advanced to the Debtor.

9.      To date, the Loan has accrued interest in the approximate amount of $207,499.68 above and beyond the depleted Interest Reserve. Accordingly, the current amount of Kennedy's secured claim is based on a principal balance of $4,150,000.00 plus accrued interest, at the

---

[2] The Debtor waived any right to notice of acceleration of the Loan. (Loan Agreement, p. 26; Note, p. 3; Mortgage, p. 21.)

Default Rate, and Kennedy's attorneys' fees and costs incurred in connection with this case.  As of April 6, 2009, the approximate amount of Kennedy's post-petition legal fees and costs was approximately $82,936.43.

## III.    LEGAL ARGUMENT

### A.    KENNEDY, AS AN OVERSECURED CREDITOR, IS ENTITLED TO ACCRUE POST-PETITION INTEREST ON THE LOAN AT THE DEFAULT INTEREST RATE PURSUANT TO 11 U.S.C. § 506(b).

10.    Kennedy treated the Debtor's bankruptcy filing as an Event of Default, accelerated the Loan, and implemented the Default Rate, all of which it was authorized to do pursuant to the Loan Documents.  (Loan Agreement, pp. 24-26; 28; Note, pp. 3-4; Mortgage, pp. 5, 21.)  Kennedy's treatment of the Debtor's bankruptcy filing as an Event of Default under the Loan Documents did not violate Section 365(e) of the Bankruptcy Code, which invalidates so-called *ipso facto* or bankruptcy clauses.  Section 365(e)(1) provides:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on –
>
> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>
> (B) the commencement of a case under this title; or
>
> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11.    However, Section 365(e)(2) provides an exception to the *ipso facto* rule by providing, in relevant part:

> (e)(2) Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or duties, if –

5

(B) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

11 U.S.C. § 365(e)(2)(B).

12.     Clearly, the Loan Documents are a "contract to make a loan" to the Debtor. Further, the Holdbacks are evidence of a contract to provide "financial accommodations" to the Debtor. Thus, the Bankruptcy Code's general rule against enforcement of so-called *ipso facto clauses* does <u>not</u> apply to the Loan Documents. <u>See</u> <u>Foothill Capital Corp. v. Official Unsecured Creditors' Committee</u>, 246 B.R. 296 (E.D. Mich. 2000) (Loan contracts fall within the category under §365(e)(2)(B) whereby parties can expressly provide that the act of filing for bankruptcy will trigger the termination of their agreement). As stated in <u>Collier on Bankruptcy</u>, Vol. 3, ¶365.07[2] (15th Ed. Rev. 2008):

> Section 365(e)(2) provides that the invalidation of *ipso facto* clauses does not apply to contracts or leases that are nonassignable under applicable nonbankruptcy law and contracts to make a loan or extend financial accommodations or debt financing to or for the benefit of the debtor or to issue a security of the debtor. Further, in the case of loans, the obligation to pay may be accelerated.

13.     Thus, Kennedy clearly did not violate Section 365(e) of the Bankruptcy Code when it accelerated the balance due under the Loan and began accruing interest on the Loan at the Default Rate upon the Debtor's Chapter 11 filing, which was a defined Event of Default under the Loan Documents.

14.     Similarly, Kennedy did not violate the automatic stay by accelerating the balance due under the Loan. Kennedy did not take any action or commence any proceeding to recover the Advanced Funds or to foreclose the Mortgage. Nor did Kennedy take any action against the Real Property. In fact, Kennedy is not required to take such actions prior to instituting the Default Rate. (Mortgage, p. 47.) Notably, courts have distinguished between acceleration of a

6

debt upon the filing of the bankruptcy petition for the purpose of calculating the creditor's claim in a case, and acceleration for the purpose of taking actions against a debtor in violation of the automatic stay. See In re PCH Associates, 122 B.R. 181 (Bankr. S.D.N.Y. 1990)(Where a mortgagee files a proof of claim for the entire accelerated principal amount, the subject note is deemed accelerated for purposes of calculation of the mortgagee's claim, and such acceleration does not violate the automatic stay). Accordingly, the Court should award Kennedy post-petition interest on the Loan at the Default Rate, pursuant to Section 506(b) of the Bankruptcy Code.

**B.      KENNEDY IS ENTITLED TO REIMBURSEMENT OF ITS ATTORNEYS' FEES AND COSTS INCURRED IN CONNECTION WITH THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 506(b).**

15.      Pursuant to the Loan Documents, Kennedy is entitled to recover its legal fees and costs incurred in connection with the Loan. (Loan Agreement, p. 28; Note, p. 4, Mortgage, p. 24.) Moreover, as the Debtor has repeatedly acknowledged, and no party has disputed, Kennedy is an oversecured creditor. Thus, Kennedy is unquestionably entitled to recover its reasonable attorneys' fees and costs incurred in connection with this Chapter 11 case. (Fourth Amended Disclosure Statement (Docket No. 64), p. 3.) Allowance of these fees is governed by Section 506(b) of the Bankruptcy Code, which provides:

> (b)      To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. §506(b); See United States v. Ron Pair Enterp., Inc., 489 U.S. 235, 109 S.Ct. 1026, 103 L. Ed. 2d 290 (1989) (recovery of post-petition interest on an oversecured claim is unqualified, whether or not the lien is consensual, while recovery of legal fees and costs is allowed only if they are reasonable and provided for in the agreement under which the claim arose).

7

16.     The "reasonableness" requirement imposed by Section 506(b) operates as a limitation upon the amount of contractually agreed upon attorney's fees a bankruptcy court may properly award an oversecured creditor.  In re Nicfur-Cruz Realty Corp., 50 B.R. 162, 167 (Bankr. S.D.N.Y. 1985).  "Reasonable attorneys' fees … are such as are necessary to accomplish the end sought considering the skill and experience of counsel, the magnitude, complexity and novelty of the litigation, the respective positions of the parties in the litigation and the extent of responsibility legitimately undertaken by counsel."  Id. at 167, *citing* U.S. v. Bedford Associates, 548 F.Supp. 748, 751 (S.D.N.Y. 1982).

17.     For the period of the Filing Date through April 6, 2009 (the "Post-Petition Period"), Kennedy has incurred approximately $76,964.00 in legal fees, based on 220.05 hours of billable time, and $2,361.18 in costs.  Additionally, Kennedy's attorneys have approximately $3,611.25 in unbilled charges for the month of April thus far.  Kennedy submits that these legal fees and costs were reasonable and necessary to preserve its interests in this case.  Kennedy was required to actively participate in this case from the outset to ensure that its lien was adequately protected.  As the Court is aware, the Debtor proposed several different sales of the Real Property during this case and filed motions to approve those sales and related sale procedures, before finally proceeding with the Sale to Bowne.  Moreover, Kennedy was required, in connection with various versions of disclosure statements and plans of reorganization filed by the Debtor, to ensure that its secured claim was treated in accordance with the Bankruptcy Code.  Notably, Kennedy's objections resulted in revisions to the Debtor's Disclosure Statement, and its objections to the Sale Motion and the Plan were resolved in principal among the parties, with the outstanding issues addressed herein.

18.     Further, Kennedy asserts that its fees were billed at market rates by experienced bankruptcy professionals.  At a blended hourly rate of approximately $349.75, the rates charged

by Kennedy's attorneys were well within the customary range charged by similarly experienced bankruptcy practitioners for Chapter 11 cases in the metropolitan area. Accordingly, because Kennedy's attorneys' fees and costs were necessary and reasonable for the protection of its interests as a secured creditor, Kennedy is entitled to reimbursement of these expenses pursuant to Section 506(b) of the Bankruptcy Code.

31392/0530-5495085v3

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Kennedy respectfully requests that the Court enter an order (i) awarding Kennedy post-petition interest on the Loan at the Default Rate, (ii) awarding Kennedy reimbursement of its post-petition attorneys' fees and costs in the amount of $82,936.43 pursuant to Section 506(b) of the Bankruptcy Code, (iii) directing Bowne to pay Kennedy's allowed post-petition interest and attorneys' fees and costs at or before the closing of the Sale, and (iv) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 7, 2009

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Kennedy Funding, Inc.

By:_____*/s/ Kenneth L. Baum*_____
Kenneth L. Baum (KB-2492)
900 Third Avenue, 16th Floor
New York, New York 10022
(212) 752-8000
(212) 752-8393 Facsimile