UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                              Case No.: 1-08-45854-dem

BOWNETREE, LLC,                                      Chapter 11

                                  Debtor.
--------------------------------------------------------x


## DECISION AND ORDER ON APPLICATION FOR
## CALCULATION OF POST-PETITION INTEREST RATE

Appearances:

Alina N. Solodchikova, Esq.
Stephen B. Kass, Esq.
Law Offices of Stephen B. Kass
Attorneys for Debtor
225 Broadway, Suite 711
New York, New York 10007

Kenneth L. Baum, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys for Kennedy Funding, Inc.
900 Third Avenue, 16th Floor
New York, New York 10022

Robert M. Terenzi, Esq.
Berkman, Henoch, Peterson & Peddy, P.C.
Attorneys for 36-20 Bowne LLC
100 Garden City Plaza
Garden City, New York 11530


DENNIS E. MILTON
United States Bankruptcy Judge

## INTRODUCTION

        The matter is before the Court on the motions of Bownetree,  LLC (the "debtor")

and 36-20 Bowne LLC ("Bowne") for an Order approving the sale of the debtor's property and

the motion of Kennedy Funding, Inc. ("Kennedy") for an Order granting the allowance of Post-

Petition Interest and Attorneys Fees.   The principal issue for determination is whether Kennedy, as an over secured creditor, is entitled to be paid post-petition interest on the principal at the pre-petition rate of 12% or at the default rate of 25%.   For the reasons set forth below, the Court has determined that the default rate should not apply and that Kennedy should be paid at the 12 % rate of interest.

## JURISDICTION

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§1334(b) and 157(b)(2)© and the Eastern District of New York standing order of reference dated August 28, 1986.  This Decision and Order constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

## FACTUAL BACKGROUND

On June 27, 2008, Kennedy extended a loan to the debtor in the principal amount of $7,050,000.00 (the "loan").    The loan was secured by a Loan and Security Agreement, a Promissory Note (the"Note"), a Mortgage and Security Agreement (the "Mortgage") and an Assignment of Leases and Rents on the Real Property (collectively the "loan documents"). The loan was for a three year term.  At the closing, only $4,150,000.00 was disbursed, with the remainder ($2,900,00.00) retained by Kennedy as holdbacks to be funded in the future. The debtor received $2,544,306.92 at closing and Kennedy retained the remaining $1,606,694.08, which represented prepaid interest and professional fees.

Pursuant to the Note, the rate of interest was 12% per annum for the month of June 2008; the greater of 12% or prime rate plus 7% percent from July 1, 2008, through and including June 26, 2009; and the greater of 18% or prime rate plus 13% from June 27, 2009,

through and including the maturity date of June 11, 201. <u>See</u> Note, p. 2.  The Note provided for a

default rate of interest of 25% per annum, subject to limitation, if applicable, by the highest

lawful rate (the "default rate.")  <u>See</u> <u>id</u>.  p. 1, 4. In connection with the loan, Kennedy established

a reserve for pre-paid interest in the original amount of $498,000.00.

   The loan documents provided that a filing in bankruptcy constituted an event of

default.  <u>See</u> Mortgage at ¶10.  In the event of default, Kennedy would be able to accelerate the

full balance of the loan.  <u>See</u> Loan and Security Agreement p. 24-26; Note p. 3-4; Mortgage ¶5,

18-19.  If the debtor failed to pay the full balance of the loan, the loan documents provided that

the interest rate be increased to the default rate.  <u>See</u> Loan and Security Agreement, pp. 24-26,

28; Note, pp. 3-4.

   On September 4, 2008, the debtor filed a voluntary petition for relief under

Chapter 11 of the Bankruptcy Code.  At this time, there were no amounts outstanding on the

loan.  Prior to filing for bankruptcy protection, the debtor had been engaged in the business of

real estate development, sales and construction.  Since filing, the debtor has continued to operate

its business as a debtor-in-possession.  The property of the debtor consists primarily of five

partially finished townhouses and four parcels of vacant land (the "Properties").  Pursuant to a

subordination agreement between Kennedy and Bowne, executed on June 27, 2008, Kennedy has

a first mortgage secured by the Properties and Bowne has a second mortgage secured by the

Properties.   The debtor has not received any payments from the $2,900.000.00 in holdbacks

which the parties anticipated would be distributed in the future.

   After the debtor's attempts to sell all of its assets to a third party proved

unsuccessful, Bowne and Kennedy commenced negotiations for Bowne's purchase of the

Properties subject to Kennedy's lien.  On February 13, 2009, the debtor filed an application for

an order pursuant to Section 363(b) of the Bankruptcy Code allowing the sale of the Properties.

On March 2, 2009, Kennedy filed an Objection to this application, and on March 31, 2009, the

Court held a hearing on the application and on confirmation of the debtor's Chapter 13 plan.  At

the hearing, Kennedy and Bowne agreed that the sale of the Properties to Bowne would go

forward, with the Court to determine several remaining issues, including the determination of the

applicable rate of interest on the loan and the award of attorneys fees.

On March 9, 2009 and March 21, 2009, the Court held hearings on the applicable

rate of interest.  At these hearings, the parties agreed that the debtor would not receive any future

funding from Kennedy.  On March 28, 2009 and May 12, 2009, the Court held hearings on the

applicable attorneys fees.  On May 1, 2009, the debtor filed its Chapter 11 Plan.  On May 20,

2009, the Court issued an Order confirming the Chapter 11 Plan. Under the terms of the Chapter

11 Plan, the loan will not be modified and Kennedy's claim will be paid in full.

Kennedy argued that the debtor's bankruptcy filing constituted an event of

default, accelerating the loan and triggering the default rate.  Kennedy requested that the default

rate be deemed in effect from the date of filing to the date of the closing.  Bowne argued that

Kennedy was not entitled to the default rate and that the Court fix the interest rate at 12% per

annum.

## DISCUSSION

### The Application of the Default Rate of Interest
### Would be an Act in Violation of the Bankruptcy Code

The first issue for determination is whether the debtor's filing of a bankruptcy

petition constituted an enforceable event of default which would trigger an acceleration of the

loan and implementation of the default rate of interest.  Kennedy has treated the debtor's

bankruptcy filing as an event of default, accelerating the loan, and triggering the default rate of

interest from the date of filing to the date of closing.  Kennedy relies on Paragraph 10(p) of the

Mortgage to justify its position that the filing of a petition in Bankruptcy constituted an event of

default. The Mortgage provides:

> Events of Default. The occurrence of any of the following shall
> constitute an event of Default hereunder... (p) if there shall be filed
> by or with the consent or authorization of the Borrower or any
> Guarantor a petition in Bankruptcy for liquidation or for
> reorganization...

Mortgage at ¶10.

The debtor argued that the "event of default" language in Paragraph 10(p) of the

Mortgage is an ipso facto clause that is unenforceable under Sections 365(e) and 541(c)(1)(B) of

the Bankruptcy Code.  The modification of rights under an executory contract may not be

effected solely because of a contractual provision that is conditioned on the commencement of a

case under Chapter 11 of the Bankruptcy Code.  See In re Texaco, 73 B.R. 960, 964 (Bankr.

S.D.N.Y. 1987).  Such a clause is considered an ipso facto clause, and is unenforceable under

Section 365(e) and 541(c)(1)(B) of the Bankruptcy Code.  See id.  See also In re Pak, 252 B.R.

215, 217 (Bankr. M.D. Fla. 2000).  Section 365(e)(1) of the Bankruptcy Code provides:

> Notwithstanding a provision in an executory contract or unexpired
> lease, or in applicable law, an executory contract or unexpired
> lease of the debtor may not be terminated or modified, and any
> right or obligation under such contract or lease may not be
> terminated or modified, at any time after the commencement
> of the case solely because of a provision in such contract of lease
> conditioned on - ...
>
> (B) the commencement of a case under this title...

11 U.S.C. § 365(e)(1).  The debtor maintained that under this section the default event provision of Paragraph 10(p) of the Mortgage would be unenforceable.  The commencement of the debtor's Chapter 11 case cannot be used to modify the terms of the Mortgage, accelerate the loan, and trigger the default rate of interest.  Such an act would be in violation of the Bankruptcy Code.

Kennedy also contended that Paragraph 10(p) of the Mortgage was enforceable because Section 365(e)(2) provided an exception to application of the ipso facto doctrine for contracts to make a loan.  Section 365 (e)(2) provides:

> Paragraph (1) of this subsection does not apply to an
> executory contract or unexpired lease of the debtor,
> whether or not such contract or lease prohibits or
> restricts assignments of rights or duties, if - ...
> (B) such contract is a contract to make a loan, or
> extend other debt financing or financial accommodations,
> to or for the benefit of the debtor, or to issue a
> security of the debtor.

11 U.S.C. § 365(e)(2).  Kennedy maintained that the loan documents constituted a contract to make a loan to the debtor and that the holdbacks in the loan documents were evidence of a contract to provide financial accommodations to the debtor.  For that reason, Kennedy argued that accelerating the loan and applying the default rate would not be in violation of Section 365(e) of the Bankruptcy Code.

The Court finds that the exception of Section 365(e)(2) is not applicable here. The holdbacks in the loan documents were never advanced to the debtor and both parties have agreed that no money will be lent in the future. Kennedy argued that at the very least, the loan documents constituted a contract to make a loan at the time of the debtor's filing. However,

under the terms of the debtor's Sale Plan and Chapter 11 Plan the debtor will not receive any

additional funding from Kennedy.  The Sale Plan and Chapter 11 Plan indicate a mutual

understanding that Kennedy's obligations under the loan documents have terminated. The Court

finds that there is no contract to make a loan or provide financial accommodations to the debtor

that would fall under the exception of Code Section 365(e)(2) in this case. The debtor's filing of

bankruptcy cannot be used to accelerate the loan and trigger the default rate of interest under

365(e)(2).

### The Application of the Default Rate Would Be Inequitable.

It is undisputed that Kennedy is an oversecured creditor.  Pursuant to Section

506(b) of the Bankruptcy Code an oversecured creditor is entitled to post-petition "interest on its

claim."  11 U.S.C. §  506(b).  Section 506(b) provides:

> (b) To the extent that an allowed secured claim is
> secured by property the value of which, after any
> recovery under subsection © of this section, is
> greater than the amount of such claim, there
> shall be allowed to the holder of such claim,
> interest on such claim, and any reasonable fees,
> costs, or charges provided for under the agreement
> under which such claim arose.

11 U.S.C. §  506(b).

However, courts have found that the granting of interest under Section 506(b) is

not dictated by the loan agreement. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235,

239-240 (U.S. 1980) (where the  Supreme Court, in considering the plain language of Section

506, found that the phrase "interest on such claim" is not limited by the subsequent language

"provided for under the agreement under which such claim arose," and therefore the granting of

interest is not limited by the terms of the loan agreement).  Legislative history and case law show

that there is not one appropriate rate of interest applicable under Section 506(b).  See id; see also

In re Laymon, 958 F.2d 72, 75 (5th Cir. Tex. 1992).   Therefore, the courts have properly

considered the issue of whether an oversecured creditor is entitled to a contractually bargained

for default rate of interest and under what circumstances such an award is appropriate. See In re

Johnson, 184 B.R. 570, 572 (Bankr. D. Minn. 1995).

    In so doing, the majority of courts require a factual and equitable analysis prior to

the application of a contractual default rate of interest.  See In re Johnson, 184 B.R. at 572.  In

particular, courts have considered the following factors when deciding whether to enforce a

contractual default rate as opposed to a non-default rate:

> (1) The difference between the default and non-default rates; (2)
> the reasonableness of the differential between the rates; (3) the
> relative distribution rights of other creditors and whether
> enforcement of the higher rate will do injustice to the concept of
> equitable distribution of the estate's assets; and (4) the purpose of
> the higher interest rate.

Id. at 573.

    The Court finds that application of the default rate of interest would be

inequitable. The difference between the default rate and non-default rate is significant and

unexplained.  The enforcement of the default rate would have an adverse affect on other

creditors. There is a limited recovery to unsecured creditors in this case.  Thereby the application

of the default rate, at twice the rate of the  non-default rate, would reduce an already limited

recovery to unsecured creditors to a minimal amount.

    In addition, the Court finds that the application of the default rate under these

circumstances would be inequitable because the default, if any, was cured under the Chapter 11

Plan and the Sale Plan.  Section 1123(a)(5) of the Bankruptcy Code states that a plan shall

"provide adequate means for the plan's implementation, such as... curing or waving of any default." 11 U.S.C. § 1123(a)(5). The term "cure" is not defined in the Bankruptcy Code, but courts have generally agreed that " 'curing a default commonly means taking care of the triggering event and returning to pre-default conditions.' " In re Entz-White Lumber & Supply, Inc., 850 F.2d 1338, 1340 (9th Cir. 1988) (quoting In re Taddeo, 685 F.2d 24, 26-27 (2d Cir. 1982)). The court in In re Entz-White Lumber & Supply, Inc. stated that a cure returns the parties to the status quo ante by paying all arrearages on the debt and reinstating the debt's original payment terms. Id. Therefore, it follows, that a cure nullifies the consequences of a default, including a higher post-default interest rate. See In re Johnson, 184 B.R. at 574. See also In re Southeast Co., 868 F.2d 335, 338 (9th Cir. 1989); Entz-White, 850 F.2d at 1342; In re Countrywood Inv. Group, Ltd., 117 Bankr. 338, 339 (Bankr. M.D. Tenn. 1990); In re Forest Hills Assocs.), 40 B.R. 410, 414 (Bankr. S.D.N.Y. 1984).[1]

Here, the debtor's Chapter 11 Plan and Sale Plan places Kennedy in a position of status quo. There are no amounts outstanding on the loan and under the terms of the Chapter 11 Plan, Kennedy's claim will be paid in full or 36-20 Bowne LLC will assume the first mortgage lien on the Properties. See Sale Plan at ¶ 7.1. In addition, Kennedy will receive legal costs and closing fees. Id. Under the Chapter 11 Plan and the Sale Plan, the loan will not be modified, and neither the interest rate nor the terms of the loan will change. Kennedy is getting the full benefit of its bargain. Since the Sale Plan is a cure, it nullifies all consequences of the default.

---

[1] Courts have found that when a debtor cures a default, such as by reinstating the maturity date, compensating the holder for any damages incurred, and not altering any other rights, the debtor has cured the default and need not pay a Default Rate of interest that would be applicable under Section 506(b). In re Johnson, 184 B.R. at 574 (Bankr. D. Minn. 1995). See, e.g., In re Chateaugay Corp., 150 B.R. 529, 543 (Bankr. S.D.N.Y 1993), aff'd, 170 Bankr. 551 (S.D.N.Y. 1994); In re PCH Assocs., 122 Bankr. 181, 199-200 (Bankr. S.D.N.Y. 1990).

Finally, based on equitable principles, the Court cannot permit the default rate to be applied based on a technical default where the debtor anticipated the default and made precautions for it. Under the terms of the loan, the debtor was not required to make regular payments until after June 26, 2009. The default rate which Kennedy seeks to apply was only triggered by the debtor's filing of bankruptcy. In addition, in connection with the loan, the debtors established a reserve for pre-paid interest in the original amount of $498,000. As of the date of debtor's filing, Kennedy was holding the sum of $410,850 in the Interest Reserve. When the default rate was applied on the date of filing, Kennedy began to deplete the Interest Reserve at twice the speed. Any default on the part of the debtor was a technical default under the terms of the contract or the result of an application of the default rate. Therefore, it would be inequitable to enforce the default rate under these circumstances.

**An Award of Attorneys Fees Is Appropriate.**

Kennedy is an over secured creditor and as such is entitled to recover "reasonable" attorneys fees and costs incurred in connection with this Chapter 11 case. 11 U.S.C. § 506(b). For the period from the filing date, September 4, 2008 through April 6, 2009, Kennedy has incurred approximately $71,742.43 in legal fees and costs, consisting of $69,381.25 for professional services based on 196.10 hours of billable time and $2,361.18 in costs. In addition, Kennedy has submitted approximately $3,611.25 in unbilled charges for the month of April as of April 7, 2009. Kennedy is seeking to recover approximately $75,353.68 in legal fees and costs.

Although the debtor has recognized Kennedy's right to compensation for professional legal services rendered in this Chapter 11 case, the debtor has objected to an award

-10-

in the full amount sought.   The debtor claims that Kennedy was uncooperative in negotiating the

terms of the debtor's Confirmation and Sale Plan, causing unnecessary legal fees.   The debtor

requests that Kennedy be denied legal fees for the drafting and filing of the objections to the

initial sale motion and disclosure statement motions and the filing of opposition to confirmation

and final sale hearing motions.   According to the debtor's calculations, Kennedy's counsel has

spent approximately 25.45 hours working on these actions for a total of $9,069.25 in legal fees.

The debtor thus requests that any fee award to Kennedy be reduced in the amount of $9,069.25.

The debtor claimed that Kennedy's time records reflect excessive legal research services in the

amount of $5,630.00 for twenty hours of research.   The debtor also objects to payment of 4.1

hours billed for administrative work such as scanning, e-filing e-mailing and obtaining e-filing

passwords, or $676.50.   Thus, the debtor objects to payment of approximately $17,627.00 in

legal fees.   This would result in an award of $57,726.68 ($75,353.68 - $17,627.00 = $57,726.68).

At a hearing on the application on May 12, 2009, the Court granted the

application for compensation and advised counsel for Kennedy that the Court would award fees

and costs in an amount close to $60,000.00 upon detailed reviewed of the billing statements

which counsel for Kennedy has submitted.

It is well settled that the burden of showing the reasonableness of the attorneys

fees is upon the creditor seeking such an award. See In re Mills, 77 B.R. 413, 418 (Bankr.

S.D.N.Y.  1987).   Applying this standard, the Court awards Kennedy $61,337.93 in legal fees

and costs.   The Court has reduced the amount requested for the following reasons in the

corresponding amounts.

A.  Billing for administrative,                                                    Total
    non legal tasks:                    4.1 hours (MEM)( 10/24/09 -

|  |  | 3/25/09)) | 676.50 |  |
|  |  | (FP) (1/5/09) | 88.00 |  |
|  |  |  |  | 764.50 |

| B. Improper Block Billing: | 5.8 hours (RTJ(9/19/08) | 1,160.00 |  |
|  | 3.75 hours (KLB) (10/06/08) | 1,593.75 |  |
|  | .75 hours (KLB)(11/7/08) | 318.75 |  |
|  | .5  hours (ICH(12/17/08) | 170.00 |  |
|  | 1.5 hours (KLB)(½6/09) | 637.50 |  |
|  | .75 hours (KLB)(1/30/09) | 318.75 |  |
|  | 3.00 hours (ICH)(3/2/09) | 1,020.00 |  |
|  | .5 hours (ICH)(3/4/09) | 170.00 |  |
|  | .5 hours(KLB)(3/12/09) | 212.50 |  |
|  | .6 hours (KLB)(3/20/09) | 255.00 |  |
|  | 7.0 hours (ICH)(3/24/09) | 2,380.00 |  |
|  | .5 hours (ICH)(3/30/09) | 170.00 |  |
|  |  |  | 8,406.25 |

C. Inadequately Described Activities

| 3.85 hours (KLB)(3/24/09) | (Work on Objection to Sale Motion and Plan Confirmation) |  |  |
|  |  | 1,636.25 |  |
| .75 hours (KLB)(10/29/08) | (Review Revised Sale Motion, Order) | 318.75 |  |
| .8 hours (KLB)(11/07/08) | (Review Disclosure Statement) | 340.00 |  |
| .5 hours(KLB)(12/12/08) | (Review File and Prepare Proof of Claim) | 170.00 |  |
|  |  |  | 2,465.00 |

D. Improperly Billed Travel Time

|  | 10/6/2008 | 680.00 |  |
|  | 10/30/2008 | 1,700.00 |  |
|  |  |  | 2,380.00 |

Total Disallowed Billings                                                                    14,015.75

Kennedy has sought a total of $75, 353.68 in legal fees and costs.  The Court has disallowed $14,015.75 of this amount, leaving $61,337.93 as the authorized payment to Kennedy for reasonable attorneys fees and costs.

## CONCLUSION

-12-

As an oversecured creditor Kennedy is entitled to post-petition interest under 11 U.S.C. §506(b).  However, Kennedy may not use the commencement of debtors' Chapter 11 bankruptcy case to modify the terms of the mortgage, accelerate the loan, and trigger the default rate of interest.  The Court finds that such an act would be in violation of the Bankruptcy Code. The Court also finds that Kennedy's application of the default rate would be inequitable. The default, if any, was cured under the Chapter 11 Plan and the Sale Plan.   Accordingly, the Court finds that the post-petition interest rate of Kennedy's loan is to be calculated at the pre-petition interest rate of 12 percent.

In addition, as set forth above, the Court awards Kennedy $61,337.93 as the authorized payment to Kennedy for reasonable attorneys fees and costs.  The Court shall issue a separate Order with regard to the award of legal fees and costs.

IT IS SO ORDERED.

Dated: Brooklyn, New York
       July 24, 2009

                                                            S/Dennis E. Milton
                                                            DENNIS E. MILTON
                                                            United States Bankruptcy Judge